IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
---

DAVID W. WATTS,

                Plaintiff,                      OPINION AND ORDER

    v.                                      24-cv-504-wmc

CHARLES BERGREN,

                Defendant.
---

An inmate representing himself, plaintiff David Watts claims that defendant Correctional Officer Charles Bergren violated his Eighth Amendment rights by enabling another inmate to sexually harass and threaten him. As an incarcerated litigant, plaintiff must comply with the Prison Litigation Reform Act ("PLRA"), which requires that he exhaust his administrative remedies before filing a federal lawsuit. 42 U.S.C. § 1997e(a). Defendant has moved for summary judgment based on plaintiff's failure to exhaust his administrative remedies on his claim. (Dkt. #36.) In the alternative, defendant asks the court to hold a *Pavey* hearing if it finds there are genuinely disputed material facts on the question of exhaustion.[1] For the reasons explained below, the court will reserve ruling on this motion pending a *Pavey* hearing, which will be promptly scheduled.

---
[1] *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008).

1

UNDISPUTED FACTS[2]

Plaintiff David W. Watts is currently incarcerated at New Lisbon Correctional Institution, and he was previously incarcerated at Columbia Correctional Institution. (Pl.'s Complaint (dkt #1.)) While at Columbia, Watts alleges that defendant Correctional Officer Charles Bergren enabled and encouraged another inmate, Clinton Linzy, to sexually harass and threaten him while passing by Watts' cell on May 28, 2024. (*Id.*) This incident forms the basis of this lawsuit. (Screening Order (dkt # 16), at 3.)

Watts filed an inmate complaint on July 6, 2024, describing this May 28 incident. (Dkt. #38-2, at 8.) That complaint also claimed that other prison officials knew of Linzy's ongoing harassment and allowed him to continue. (*Id.*) The Inmate Complaint Examiner's Office sent Watts a notification that it received his complaint on July 8. (*Id.* at 1, 7.) Shortly after, on July 25, Watts filed this federal lawsuit. (Pl.'s Compl. (dkt # 1).)

On July 31, the Inmate Complaint Examiner ("ICE") rejected Watts' inmate complaint, concluding that the issue was now moot since Linzy had been transferred to another institution. (Dkt. #38-2, at 6.) *See also* Wis. Admin. Code § DOC 310.10(6)(f) ("The ICE may reject a complaint [if]. . . the issue is moot.")

Watts next appealed this rejection on August 2. (Dkt. #38-2, at 20.) In his appeal, he explained that his complaint, in part, was "clearly against . . . CO Charlie Bergren for helping/letting Linzy" harass him on May 28, and that he wanted to "hold CO Bergren accountable." (*Id.* at 21.) The reviewing authority decided that "Watt's complaint was

---

[2] Unless otherwise indicated, the court draws the following facts from the record and finds them undisputed for the purposes of the summary judgment motion on exhaustion.

appropriately rejected by the [Examiner] in accordance with DOC 310.10(6)" on August 5. (*Id.* at 5.)

Watts declares that he also attempted to file three, other inmate complaints against Officer Bergren for allowing Linzy to harass him before the July 6 complaint.[3] (Dkt. #41, at 9-10); *see* Wis. Admin. Code § DOC 310.07(2) (requiring inmates to file complaints within 14 days of the occurrence giving rise to the complaint). To file an inmate complaint at Columbia, inmates may place a complaint form in a locked drop box located in the dayroom in their housing unit, or they may hand their complaints to staff to place in the drop box. (Plath Decl. (dkt. #49) ¶¶ 6, 12.) Throughout the relevant time period, Watts had no restrictions that would have prevented him from accessing the dayroom and placing any complaints in the drop box. (Bergren Decl. (dkt #50) ¶ 12.) Inmate Complaint Examiners collect the complaints from the drop box every weekday morning, then the Inmate Complaint Examiner Office date-stamps the complaints on the day they are collected. (Plath Decl. (dkt. #49) ¶ 7.)

At Columbia, there are only two keys that Inmate Complaint Examiners can use to open the locked drop boxes and collect the complaints. (*Id.* ¶¶ 12-13.) Access to the keys

---

[3] Watts also attests that throughout June, he sent interview/information requests to Warden Larry Fuchs and his secretary, claiming that "staff" allowed Linzy to threaten him on May 28 and other prison officials knew about this misconduct but still allowed it to occur. (Dkt. #41-1, at 2, 4; Dkt. #38-2, at 12-18.) Fuchs or his secretary responded to five requests, indicating that the May 28 matter had been referred to the PREA manager at Columbia, and that prison officials would follow up with Watts about the matters described in the requests. (Dkt. #41-1, at 2, 4; Dkt. #38-2, at 12-18.) In order for an incarcerated person to exhaust his administrative remedies in Wisconsin prisons, however, he must file an inmate complaint, rather than an interview/information request. Wis. Admin. Code § DOC 310.05. So, the court may not consider these requests when deciding whether Watts exhausted his administrative remedies as to this claim.

themselves is secured by a passcode, and only Inmate Complaint Examiners have the codes to access the keys. (*Id.* ¶¶ 12-13.) Correctional officers are not given the access code, are not permitted to use the keys, and are not permitted to open the complaint drop boxes. (*Id.* ¶ 11.) The drop boxes are also placed in view of cameras. (*Id.* ¶ 14.) If an inmate claims that staff are tampering with their complaints, they may also request that the Inmate Complaint Examiner office preserve and view the footage. (*Id.*) The ICE office at Columbia did not receive any footage preservation requests from Watts.[4] (*Id.* ¶ 16.)

Specifically, Watts attests that he submitted three other complaints about the May 28 incident on June 2, June 5, and June, 8, 2024, but that each time, Officer Bergren brought the complaints back to Watts, tore them up in front of him, and said, "Watts, you must want to die, stop filing . . . complaints against me and staff." (Dkt #41, at 10.)[5] Watts further represents to the court that he "put [the complaints] in the ICE Box" and then Officer Bergren "somehow gets a hold of them . . . and brings them back" to him to rip up. (Dkt. #41-1, at 72-75.) Watts also claims that he asked the ICE Office in an interview/information request to investigate how this was possible. (*Id.*) Finally, Watts

---

[4] Watts also submits to this court interview/information requests that ask the security office at Columbia to preserve the footage outside his cell from May 28. (Dkt. #41-1, at 4.) However, there are no documented requests that the footage recording the drop boxes be preserved, nor does the record establish the proper procedure to request preservation of recordings of the drop boxes. (*See id.*)

[5] Watts submitted the three complaints in question as exhibits to his brief in opposition to defendant's motion. (Dkt. #41-1, at 60-70.) The complaints he submitted are intact, and there is no indication that the Inmate Complaint Examiner office received or processed any of them, as they were not date-stamped or given a complaint number. (*See id.*) Watts also submits as exhibits several other interview request forms that describe that Officer Bergren was tearing up his complaints and threatening him, but there is no indication on the forms submitted to the court that Columbia staff ever received, processed, or responded to these requests. (Dkt. #41, at 10-59.)

4

declares that Officer Bergren said to him in June 2024 that he should "keep his mouth shut about the matter and not file complaints against him . . . and staff if [he] wanted to continue[] to breathe and live." (Dkt #41, at 8.)

On the other hand, Officer Bergren denies ever threatening Watts to dissuade him from filing a complaint or obstructing him from filing an inmate complaint. (Bergren Decl. (dkt. #50) ¶¶ 14-15.) Officer Bergren also attests that he cannot access complaint drop boxes, and that only Inmate Complaint Examiners can access the drop boxes. (Bergren Decl. (dkt. #50) ¶ 7.) Furthermore, Officer Bergren's timesheets show that he was not working at Columbia on June 5 or June 8, when Watts says that he submitted two of the three complaints. (Dkt. #50-1, at 1.)

OPINION

The Prison Litigation Reform Act states that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Wisconsin law determines the administrative remedies available to Wisconsin DOC inmates. *Jackson v. Esser*, 105 F.4th 948, 956 (7th Cir. 2024). To exhaust his administrative remedies under Wisconsin law, an inmate must submit a complaint to the Inmate Complaint Review System (ICRS), as well as timely appeal any denial of that complaint. Wis. Admin. Code § DOC 310.05; *Hacker v. Dart*, 62 F.4th 1073, 1078 (7th Cir. 2023). Exhaustion through the ICRS is required even if the prison was already aware of the conditions about which the inmate complained. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). And, the inmate must wait to file suit until the process is complete—

5

"administrative remedies must be exhausted before filing suit, rather than in parallel with the litigation." *Ingram v. Watson*, 67 F.4th 866, 869 (7th Cir. 2023) (citing *Ross v. Blake*, 578 U.S. 632, 638–39 (2016)).

Even so, failure to exhaust is an affirmative defense, meaning a defendant is entitled to summary judgment on this defense only if he establishes that there are no genuine disputes of material fact and he is entitled to judgment as a matter of law. *Breyley v. Fuchs*, 156 F.4th 845, 847 (7th Cir. 2025). Moreover, in considering the record, the court must draw all reasonable inferences in the light most favorable to plaintiff as the nonmoving party. *Jackson v. Esser*, 105 F.4th 948, 956 (7th Cir. 2024).

In this case, defendant first argues that plaintiff failed to exhaust his administrative remedies as to the July 6 complaint, and that therefore this action must be dismissed. In response, plaintiff readily admits that he filed this civil action *before* he completed the appeals process from the denial of that complaint, but did so hoping the court would provide protection where the prison failed to do so. While the court understands that plaintiff may have been frustrated with the delay in response, inmates must strictly comply with the state's exhaustion procedures before filing suit in this court. *Dole*, 438 F.3d at 809. Therefore, because there is no dispute of material fact that plaintiff filed this action before completing the administrative process for his July 6 complaint, defendant has a valid affirmative defense for failure to exhaust as to the claims made in the July 6 complaint.

While "the exhaustion requirement is strict, [it is] not absolute." *King v. Dart*, 63 F.4th 602, 606 (7th Cir. 2023). An inmate may be excused of from exhausting his administrative remedies where such remedies are not "available," including when prison

6

employees "use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809; *Ross*, 578 U.S. at 644; *see also Thomas v. Reese*, 787 F.3d 845, 847–48 (7th Cir. 2015) (remedies unavailable where correctional officer misrepresents that prisoner cannot file grievance); *Kaba v. Stepp*, 458 F.3d 678, 686 (7th Cir. 2006) (remedies unavailable where prisoner presents evidence that prison personnel have denied forms, threatened him, and asked other inmates to attack him to prevent filing grievances); *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004) (remedies unavailable where prison personnel prevent prisoner access to grievance forms); *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016) (collecting cases).

Because failure to exhaust is an affirmative defense, "the defendant[] bear[s] the burden of proof and cannot shift it to require [plaintiff] to show that administrative remedies were unavailable." *Gooch v. Young*, 24 F.4th 624, 627 (7th Cir. 2022). In particular, "prison officials need[] to 'do more than point to a lack of evidence in the record; rather they must establish affirmatively that the evidence is so one-sided that no reasonable factfinder could find that [the prisoner] was prevented from exhausting his administrative remedies." *Jackson*, 105 F.4th at 958 (quoting *Smallwood v. Williams*, 59 F.4th 306, 319 (7th Cir. 2023)). If a genuine factual dispute exists on the availability of remedies, particularly when the dispute turns on the credibility of a sworn statement, summary judgment is inappropriate, and the court must instead hold a *Pavey* hearing. *Hernandez v. Lee*, 128 F.4th 866, 869 (7th Cir. 2025); *Ingram*, 67 F.4th at 871. "At a *Pavey* hearing, the court may take evidence and determine credibility before rendering the factual findings

7

that settle the swearing contest." *Jackson*, 105 F.4th at 957 (citing *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018)).

Here, the court must hold a *Pavey* hearing to resolve factual disputes as to whether plaintiff's attempts to file three complaints in June 2024 were thwarted by defendant. If the court believes plaintiff's sworn submissions, as it must at this stage, then defendant affirmatively prevented him from exhausting his administrative remedies by committing misconduct, and plaintiff may proceed with his claim without having needed to exhaust his administrative remedies. *See Jackson*, 105 F.4th at 958. On the other hand, if defendant would not have and could not have interfered with plaintiff's submission of grievances as he attests, then plaintiff failed to exhaust his administrative remedies, and the court must dismiss this case. In short, plaintiff's submissions are sufficient to turn this into a "swearing contest," necessitating a *Pavey* hearing. *Id.* at 957 (citing *Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014)).

ORDER

IT IS ORDERED that:

1) The court RESERVES ruling on defendants' motion for summary judgment on exhaustion grounds (dkt. #36) pending presentation of evidence at a *Pavey* hearing of whether administrative remedies were unavailable to plaintiff on June 2, 5, and 8, 2024.

2) Plaintiff's motion for a *Pavey* hearing is GRANTED, and his request for a stay of this case is DENIED. (Dkt. #41.)

3) Given the security challenges of scheduling an in-person hearing, the clerk of court is directed to set the *Pavey* hearing over video conference unless timely objected to by one or more of the parties. The parties' witness lists will be due to the court one week before the hearing.

4) The dispositive motion deadline is RESET to Friday, April 3. All other case deadlines remain in place.

Entered this 6th day of March, 2026.

                                      BY THE COURT:

                                      /s/

                                      _____

                                      WILLIAM M. CONLEY
                                      District Judge